```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


FIRST HAND COMMUNICATIONS,    )
L.L.C.                        )
                              )
     Plaintiff,               )
                              )
          v.                  )    1:05cv1281 (JCC)
                              )
BENJAMIN W. SCHWALBACH,       )
                              )
     Defendant.               )
```

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Benjamin W. Schwalbach and Alicia E. DeFrieze's motion for a preliminary injunction. For the following reasons, the Court will deny Schwalbach and DeFrieze's motion.

### I.  Background

In late 2002, Benjamin W. Schwalbach and Richard M. Carleton began discussions about starting a company to operate in the field of communication infrastructure services. In October of 2003, Carelton established First Hand Communications, LLC ("First Hand") as a Limited Liability Company in the Commonwealth of Virginia. Schwalbach, who was living in Germany at the time, alleges that Carelton agreed that Schwalbach would have a majority interest in First Hand. To avoid concerns about the appearance of impropriety given Schwalbach's other employment, however, Schwalbach claims there was an agreement that the

majority interest would not be formalized for one year after the initiation of the company's operations.  Carleton alleges that discussions started with a consideration that he and Schwalbach would be equal partners, but later Schwalbach refused to sign on as a member of the LLC, leaving Carleton with a complete interest in First Hand.

In the spring of 2004, Schwalbach recruited Alicia E. DeFrieze to become a member of First Hand.  Schwalbach and DeFrieze allege that there was an agreement between the parties that DeFrieze would become a 33% member, Carleton would become a 33% member, and Schwalbach would become a 34% majority member.  The Amended Schedule A to the First Hand Operating Agreement listed DeFrieze as having a 33% interest and Carleton having a 66% interest.  Schwalbach and DeFrieze explain that this was because Schwalbach's majority interest was not to be formalized until after one year of operation.

On March 29, 2004, Carleton granted Schwalbach a power of attorney in order to conduct business in Germany.  Carleton alleges that he made it clear that all financial and administrative paperwork would be sent and filed with the headquarters in Virginia.  Schwalbach opened a German bank account under his own name and DeFrieze's name allegedly to run the German affairs of First Hand.

Carleton was the only member with signature authority on the First Hand account in the United States.  As the business operations grew, Schwalbach allegedly insisted that Carleton quit his other employment to devote all of his time to First Hand.  Carleton allegedly refused.  Carleton also allegedly refused to account for amounts flowing into the United States First Hand account from Europe and refused to infuse any capital into First Hand from his own assets.  Carleton later allegedly refused to integrate the United States account with the First Hand account in Germany.

Carleton alleges that Schwalbach refused to provide any records, paper, or documentation of the registration of First Hand in Germany.  Carleton also alleges that Schwalbach continued to refuse to become a member of First Hand.  Pursuant to discussions about his membership, Schwalbach allegedly sought direct payment into his bank account without becoming a member or paid employee, which Carleton refused to do.

By April of 2005, First Hand had a number of contracts with various clients.  The majority of the revenue originated from its contract with Siemens.  This revenue from Siemens was being deposited into the German bank account.

When First Hand finished one full year of operation, Schwalbach alleges that Carleton refused to record Schwalbach's majority 34% interest.  Carleton contends that Schwalbach never

asked to become a member on the one-year anniversary, but when it became clear that Carleton would no longer tolerate Schwalbach's conduct, Schwalbach claimed a 51% interest in First Hand.

Carleton revoked Schwalbach's power of attorney from First Hand in September or October of 2005, after which time Schwalbach allegedly immediately ceased doing business on behalf of First Hand.  Carleton allegedly had to pay significant German back taxes that went unpaid when Schwalbach retained power of attorney.

On November 8, 2005, Carleton filed a complaint on behalf of First Hand alleging that Schwalbach engaged in, *inter alia*, embezzlement, slander, libel, and intentional interference with prospective business relations.  On April 11, 2006, Schwalbach, joined by DeFrieze, filed a counterclaim against Carleton and First Hand alleging, *inter alia*, breach of fiduciary duty, breach of contract, and civil conspiracy.

In a separate action, Carleton has made claim in Germany for money deposited there allegedly by Schwalbach and DeFrieze as partners of First Hand.  The German bank has subsequently impleaded the account into a German Court.  Carleton has taken legal steps in Germany to have the bank release the money therein to him.

Schwalbach and DeFrieze filed a motion for a preliminary injunction on May 22, 2006 to, in the words of the

movants, "maintain the status quo of First Hand Communications' assets." (Schwalbach and DeFrieze Mot. 3.)  Schwalbach and DeFrieze seek to prohibit Carleton and First Hand from executing two acts: 1) pursuing any other legal action in the United States or any other country that will or may affect the title to or security of money and property to be assets of First Hand; and 2) alienating or diminishing the accounts or property of First Hand or the assets alleged to be property of First Hand located in the United States.  This motion is currently before the Court.

## II.  Standard of Review

The issuance or denial of a preliminary injunction "is committed to the sound discretion of the trial court." *Quince Orchard Valley Citizens Ass'n, Inc v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989).  Under the test, a court should examine the following four factors: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. *See Hughes Network Systems, Inc. v. InterDigital Comm'n Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193-96 (4th Cir. 1977).  No single factor can defeat a motion for a preliminary injunction. Rather, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all the factors

considered." *Blackwelder Furniture*, 550 F.2d at 196.

When applying the four-factor test, the Court must first balance "the likelihood of irreparable harm to the plaintiff if denied and of harm to the defendant if granted." *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997). The plaintiff must demonstrate that the harm is "'neither remote nor speculative, but actual and imminent.'" *Id.* (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)).

Once the court finds that the harm to the plaintiff is actual and imminent, it should proceed to balance this harm against the harm to the defendant if the preliminary injunction issues. *See id.* The district court then determines the likelihood of success on the merits on a sliding scale as follows:

> If, after balancing [the likelihood of harms], the balance "tips decidedly" in favor of the plaintiff, a preliminary injunction will be granted "if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." As the balance tips away from the plaintiff, a stronger showing on the merits is required.

*See Manning*, 119 F.3d at 263 (quoting *Rum Creek Coal Sales*, 926 F.2d at 359)).

Finally, after balancing the hardships, the Court must consider the public interest. *See Manning*, 119 F.3d at 264.

### III.  Analysis

Schwalbach and DeFrieze's motion essentially seeks a stay of any other litigation regarding First Hand and an injunction against any manipulation or alienation of First Hand assets.  Schwalbach and DeFrieze argue that they would experience irreparable harm should their request not be granted.  Specifically, the parties highlight Carleton's management abilities of the German account and relay a fear of First Hand's insolvency should Carleton's actions continue.  In addition to financial loss, Schwalbach and DeFrieze list their business reputation as an element of the irreparable harm they face.  They insist that the non-moving parties will not be harmed if the injunction is granted since the status quo would be maintained and all the funds would be preserved.  They also purport that the injunction would be in the public interest.  Specifically, they mention that the public interest favors the most efficient resolution of disputes, thus implying that it is more efficient for the German litigation not to go forward.

Finally, Schwalbach and DeFrieze argue that they have a high likelihood of success on the merits.  In support, they simply recite the facts of the case as they interpret them.  Briefly, Carleton, as a partner with Schwalbach in First Hand, was under an obligation to ensure that Schwalbach and DeFrieze had access to the United States operations, to properly manage

the business, and to reimburse them with a proper salary and with investments they made into the business; all of which he did not do.  Alternatively, Schwalbach and DeFrieze submit that the facts prove that Schwalbach effectively led the production end of the business and all of First Hand's German affairs.  As such, Schwalbach and DeFrieze contend that they would be successful in their counterclaim and that Schwalbach would be successful in defending the claims against him.  Accordingly, they submit there are substantial grounds for granting this preliminary injunction.

The Court, however, finds that the facts of this case do not warrant the extraordinary remedy of a preliminary injunction, which is reserved for unique circumstances.  *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1992).  Schwalbach and DeFrieze cannot prove that they will suffer the type of irreparable harm that is required for a court to grant a preliminary injunction.  The gravamen of Schwalbach and DeFrieze's argument as to this element is financial in nature.  It is well-settled that financial injuries do not adequately qualify as irreparable harm:

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Al-Abood v. El-Shamari*, 71 F. Supp. 2d 511, 514 (E.D. Va. 1999) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  Whatever alleged harm Carleton is capable of inflicting without the issuance of an injunction is recoverable in the normal course of litigation.  This flies in the face of the irreparable nature of the harm requirement.

Additionally, although Schwalbach and DeFrieze do include their concern for their business reputation, which could not as easily be realized in the normal courses of litigation, this harm is neither actual nor imminent.  The case law is clear that the moving party must demonstrate that the harm is "'neither remote nor speculative, but actual and imminent.'"  *Manning*, 119 F.3d at 263 (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)).  Quite simply, Schwalbach and DeFrieze have not done so.  They have simply speculated as to the type of harm their reputations *could* suffer should Carleton be permitted to continue managing First Hand without an injunction.

"A preliminary injunction simply will not issue without this threshold showing" of irreparable injury, and Schwalbach and DeFreize have not cleared this threshold.  *Al-Abood*, 71 F. Supp. 2d at 514.  However, in light of the fact that no one factor is completely dispositive in preliminary injunction considerations, the Court will complete the analysis briefly.  The harm to First Hand if this injunction were to be issued is by no means minimal.

-9-

First Hand points out that the injunction would result in First Hand employees in Europe going without pay.  While the Court is not persuaded by First Hand's argument that it would suffer insolvency should the injunction go forward, the logistical complications, much less the judicial disruption in Germany, are not to be overlooked.

Similarly, the public interest does not weigh in favor of Schwalbach and DeFrieze.  Although judicial efficiency is a goal, it does not trump the rights of the parties to litigate their claims in their chosen forums.  It is also dubious whether granting the injunction would actually promote the interest of dispute resolution considering the timing of the German litigation.  This Court will refuse to engage in judicial arrogance by preventing litigation to go forward in foreign venues without proof of extraordinary circumstances.

The last element for the Court to consider when evaluating a motion for a preliminary injunction is the likelihood of the movant's success on the merits.  It is simply too early in the litigation for the Court to comment extensively on this element.  The parties are clearly in disagreement about the majority of the facts, such that the stories told are mostly irreconcilable.  Because the Court is not persuaded to grant the injunction by any of the other three elements required for a preliminary injunction, it is sufficient to acknowledge that the

facts as presented do not weigh heavily in favor of either party.

### IV.   Conclusion

For the foregoing reasons, the Court will deny Schwalbach and DeFrieze's motion for a preliminary injunction. An appropriate Order will issue.

```
June _30_, 2006                    _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE
```